IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WESTPORT FUEL SYSTEMS CANADA, INC., | § § § | |
| *Plaintiff*, | § | |
| v. | § § | Case No. 2:21-cv-00453-RWS-RSP |
| FORD MOTOR COMPANY, | § § § | (Lead) |
| | § | |
| FCA USA, LLC D/B/A FCA GROUP US LLC | § § § § | Case No. 2:21-cv-00457-RWS-RSP (Member) |

## REPORT AND RECOMMENDATION

Before the Court, defendant FCA USA, LLC moves to dismiss patent infringement claims asserted by plaintiff Westport Fuel Systems Canada, Inc. for improper venue, or in the alternative, to transfer.  Case No. 2:21-cv-00457, **Dkt. No. 22**; Case No. 2:21-cv-00453, **Dkt. No. 56**.  For the following reasons, the undersigned **RECOMMENDS** that the motion be **GRANTED**, and that Westport's complaint against FCA be **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND

Westport filed suit against FCA and other vehicle manufacturers alleging patent infringement in December of 2021. On February 22, 2022, FCA filed a motion to dismiss for improper venue or, in the alternative, to transfer. On March 10, 2022, Westport moved for leave to conduct limited and expedited venue discovery and on March 21, 2022, the Court granted Westport's motion, vacated the briefing schedule, and ordered a new schedule encompassing discovery, briefing, and a hearing. *Id.* at Dkt. No. 33. This case was subsequently consolidated for

pretrial purposes with Case No. 2:21-cv-00457.  FCA reurged its motion, and it was fully briefed. *Id.* at Dkt. Nos. 56, 74, 85, 95. Additionally, oral arguments were held on July 6, 2022.

**II.    LAW**

Westport has the burden of establishing that venue is proper under 28 U.S.C. § 1400(b). *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1381-82 (Fed. Cir. 2019). The patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  For the purposes of the patent venue statute, a domestic corporation resides in its State of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514, 1517 (2017).  Because FCA is incorporated in Delaware, FCA does not reside in Texas for the purposes of the patent venue statute. Accordingly, Westport must show that FCA "committed acts of infringement and has a regular and established place of business" "in the judicial district" of the Eastern District of Texas.

To show that FCA "has a regular and established place of business" in the Eastern District of Texas "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  When evaluating these factors, the Court is mindful that the patent venue statute is not to be construed broadly.  See, *e.g.*, *In re Volkswagen Group of America, Inc.*, 28 F.4th 1203, 1208 (2022).

FCA's motion does not dispute that Westport has adequately alleged infringement within the Eastern District of Texas. Nor does FCA dispute that the dealership locations are physical places within the Eastern District of Texas. The dispute here focuses on the latter of the *Cray*

elements: (1) whether dealership locations are regular and established places of business for FCA, or (2) whether FCA has established or ratified the dealerships as FCA's places of business.

### III.   ANALYSIS

Westport presents two separate theories to argue that venue is proper in the Eastern District of Texas. The first theory is that FCA employees frequent dealerships within the district to conduct FCA business.  Dkt. No. 74 pp 7-15.  The second theory is that FCA exerts sufficient interim control over the dealership employees to establish an agency relationship. *Id*. at pp 15-21.

This latter theory, that the dealership employees are agents of FCA, echoes the arguments raised in *Volkswagen* wherein the patentee argued that the dealership entities were agents of the defendants. Compare Dkt. No. 74 pp 15-21, with *Volkswagen*, 28 F.4th at 1208-14.  Here, in contrast, Westport argues that the "dealers" and their employees are agents by virtue of FCA's alleged interim control.  *Ibid.*  However, we do not appreciate any substantial difference between *Volkswagen* and Westport's agency argument here. For either the dealership or its employees to be agents of FCA requires interim control which Westport has not shown.

Westport cites contractual provisions in support of interim control.  However, substantially similar provisions were found to be insufficient by the Federal Circuit in *Volkswagen*. For example, the Federal Circuit did not find an agency relationship despite contractual provisions governing (1) what the dealerships look like,[1] (2) detailed training requirements for sales and

---

[1] Compare *Volkswagen*, 28 F.4th at 1211 ("distributors' standards regarding dealership appearance and use of signs and brand logos"), with Dkt. No. 74 p 15.

service employees,[2] (3) specifying the use of special tools or software,[3] and (4) the manufacturer's ownership of warranty obligations.[4]

Other issues not specifically discussed in *Volkswagen* were likely assumed to be present in *Volkswagen*, whether or not developed in the record, by virtue of industry practices, making the Court reluctant to rely on them to distinguish *Volkswagen*. Regardless, Westport has not shown that FCA has any day-to-day control over the operations of the dealership or the service department performing warranty work. Contractual provisions governing dealership locations (Dkt. No. 74 at 15), requiring dealerships to provide warranty services regardless of where the vehicle was purchased (*Id.* at 16-17), and instructions for warranty services (*Id.* at 18-20), "'are merely reflective of the ordinary desire of manufacturers to set sufficient minimum performance and quality standards to protect the good name of their trademark that they are allowing another to display' and 'do not establish, without more, the kind of close control … that would indicate' " an agency relationship. *Volkswagen*, 28 F.4th at 1213 (citing *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 744, 729 N.E.2d 1113 (2000)). Penalties for noncompliance, (Dkt. No. 74 at 21), are not the something "more" Westport needs in order to show agency. In the absence of day-to-day control, *Volkswagen* precludes Westport's agency theory.

Turning to the more novel aspect of the opposition, Westport argues that venue in the Eastern District of Texas is proper because of the frequency at which FCA employees visit and conduct FCA business at dealerships in the district. Laying the groundwork for this novel theory,

---

[2] Compare *Volkswagen*, 28 F.4th at 1211 ("attend mandatory training [or] have certain training certifications"), with Dkt. No. 74 pp 15, 17, 20.

[3] Compare *Volkswagen*, 28 F.4th at 1211 ("use specified tools [and] distributor-approved computer hardware and software"), with Dkt. No. 74 p 15.

[4] Compare *Volkswagen*, 28 F.4th at 1213 ("The contractual provisions require the dealerships to perform warranty services, which are reimbursed by" the manufacturer), with Dkt. No. 74 p 16, 20.

Westport begins with the indisputable proposition that dealerships are a physical place and that the dealerships are regular and established. Next, Westport argues that FCA employees frequently visit dealerships within the district to conduct FCA business, and that the frequency is sufficient to make the dealership a regular and established place for FCA employees to conduct FCA's business.

The regular and established prong of *Cray* "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged "place of business." *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). Because Westport's evidence of agency is insufficient, "the question then is whether [FCA] had an employee … with a regular, physical presence at its 'place of business' and whether that employee … was conducting [FCA]'s business." *Id.*

There is no dispute that FCA employees visit dealerships to conduct FCA business. Westport presented evidence of 588 dealership visits by and between five FCA employees responsible for 42 dealerships, and as exemplary, 41 visits by one FCA employee to a single dealership. Westport argues that this is sufficient to show a "regular, physical presence" of FCA employees at physical places of business.

Regularity denotes "steady, uniform, orderly, and methodical" and is something more than "sporadic," " 'not merely temporarily, or for some special work or particular transaction.' " *In re Cray, Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017).  Whether we consider the dealerships collectively or the single dealership visited 41 times in isolation, Westport has not shown the FCA employee presence is predictable, subject to any pattern, or consistent with regard to the time of day or with regard to the day of the week or month. At best, Westport has shown a frequency that is "sporadic" as opposed to "steady, uniform, orderly, and methodical." *Id.*  Importantly, there is also no showing

that any room or space, or even a desk, is set aside and identified as the place for FCA employees when they are at the dealership.

In further support of its position, Westport demonstrates that FCA provides employees vehicles with a total value greater than four million dollars annually for FCA employees to conduct business in the Eastern District of Texas. FCA argues that the vehicles are provided for personal use as part of the employee compensation package. Even if we assume that FCA provided the vehicles exclusively for business matters in the Eastern District of Texas, Westport has not shown that the vehicles' locations are established, as in "not transient." *Id.* at 1363. Accordingly, we have no basis from which to conclude that a vehicle provided by FCA to it employees, which travels in and out of the district and to and from several dealerships, is " 'settled certainly, or fixed permanently" at a place in question. *Id.* at 1363 (citing Black's Law Dictionary (1st ed. 1891)); see also *AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00024-JRG-RSP, 2021 WL 6616856, at *5 (E.D. Tex. Nov. 10, 2021) ("Thus, even if a vehicle is considered a physical place under the first requirement, which the Court holds that it is not, it fails the second requirement because a vehicle is transient, not established."), *report and recommendation adopted sub nom.*, No. 2:21-CV-00024-JRG-RSP, 2022 WL 178804 (E.D. Tex. Jan. 19, 2022).

Westport also argues that FCA employees live in and work from home within the district. However, the Federal Circuit rejected this argument in the absence of control over the employee's residence. 871 F.3d at 1363-'66; *Id*. at 1366 ("The fact that the defendant's employee owns a home in which he carries on some of the work that he does for the defendant was insufficient to establish venue.") (internal quotation marks omitted).

Because Westport has not carried its burden to show that venue is proper in this district, FCA requests the Court to either dismiss, or alternatively, transfer this case to the Eastern District

of Michigan. Dkt. No. 56 p 26.  Westport argues against transfer to the Eastern District of Michigan as inconvenient. Dkt. No. 74 p 26.   Since the parties disagree about an appropriate venue for transfer, and the record has not been fully developed on the most appropriate other venue, the Court concludes that dismissal without prejudice is most appropriate.

## IV.    CONCLUSION

For the reasons discussed above, Westport's complaint against FCA (Case No. 2:21-cv-00457) should be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to the Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 22nd day of August, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE