IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WESTPORT FUEL SYSTEMS CANADA, INC., | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Case No. 2:21-cv-0453-RWS-RSP |
| FORD MOTOR COMPANY, | § § | (Lead Case) |
| *Defendant.* | § § § | |

**MEMORANDUM ORDER**

Before the Court, Ford Motor Company moves to stay the case pending resolution of the

declaratory judgment action filed by Robert Bosch, LLC ("Bosch") against Westport Fuel Systems

Canada, Inc. in the Eastern District of Virginia.[1] Dkt. No. 30. Having considered the motion, it is

granted and this case is hereby **STAYED**.

**I.      Background**

In December of 2021, Westport filed suit against several vehicle manufacturers including

Ford alleging infringement of U.S. Patent Nos. 6,298,829 ("'829 patent") and 6,575,138 ("'138

patent") generally directed to a fuel injection valve for use in combustion engines. Dkt. No. 1. The

complaint alleges that Ford utilizes an allegedly infringing fuel injection valve in vehicles sold by

Ford. *Id.* at ¶¶ 44, 52.  Ford identifies the allegedly infringing fuel injection valve as a product

purchased from Bosch. Dkt. No. 30 p 3.

On April 4, 2022, Bosch filed a declaratory judgment action against Westport in the Eastern

District of Virginia seeking a declaration of noninfringement. DJ Action, Dkt. No. 1.

---

[1] *Robert Bosch, LLC v. Westport Fuel Systems Canada, Inc.*, No. 1:22-CV-00370-RDA-JFA,
Dkt. No. 1 Complaint (ED Va. April 4, 2022) (hereinafter "DJ Action" for citation purposes)

On April 12, 2022, Westport served its infringement contentions upon Ford identifying the accused device as "versions of the Bosch CRI 3.0 Piezo Injector." Dkt No. 30-2 p 8.

On April 25, 2022, Ford moved to stay the instant suit pursuant to the customer suit exception to the first to file rule. Thereafter, Westport moved the Eastern District of Virginia to dismiss the case for want of jurisdiction or alternatively either to transfer the declaratory judgment action to this Court or otherwise to stay. DJ, Dkt. No 18. Westport's motion remains pending.

## II.    Law

The first to file rule "stands for the commonsense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases" and where "the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues." *In re Telebrands Corporation,* 824 F.3d 982, 984 (Fed. Cir. 2016). However, subsequent litigation may take priority when it is initiated by or against the manufacturer or sole supplier of the goods accused of infringement in the prior suit. *In re Dell Inc.,* 600 Fed.Appx. 728, 730 (Fed. Cir. 2015), *citing Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990). The exception is "based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Spread Spectrum Screenings LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1357 (Fed. Cir. 2011) (citing *Kahn v. Gen. Motors Corp.*, 899 F.2d 1078, 1081 (Fed. Cir. 1989)). "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Id*. at 1357.

In evaluating the customer-suit exception, courts consider efficiency and judicial economy to determine whether the issues and parties in the subsequent action are such that the resolution would be dispositive of the major issues in the first filed suit. *Katz*, 909 F.2d at 1463-64. Factors

commonly considered include (1) whether the customer in the first filed action is a mere reseller of products manufactured or supplied by the party in the second filed action, (2) whether the customer in the first filed action has agreed to be bound by any decision in the second filed action, and (3) whether the party in the second filed action is the only source of the allegedly infringing activity or product. See, *e.g.*, *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006); *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *5 n. 3 (E.D. Tex. Jan. 25, 2017) (Gilstrap, J.).

Additionally, the Court will consider traditional stay factors including (1) any undue prejudice or tactical disadvantages to the nonmovant, (2) the simplification of the issues and trial, and (3) the procedural state of the action subject to a stay.  See, *e.g.*, *Glob. Equity*, 2017 WL 365398, at *10.

## III.    Analysis

To begin, the Court notes that Ford has agreed to be bound by any decision in the declaratory judgment action as to infringement of the asserted patents by the Bosch products. Dkt. No. 30 p 13.

Next, the Court finds that Ford is a mere reseller because (1) the complaint alleges that Ford manufactures accused vehicles that "utilize" the allegedly infringing fuel injector, compare Dkt. No. 1 ¶¶ 9, 13, with *id.* at ¶¶ 44, 52, and (2) the underlying functionalities of the accused product as alleged in the infringement contentions are independent of Ford's particular use, Dkt. No. 30-2. See *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014). Ford's incorporation of the accused product into its vehicles precludes comparison to cases such as *In re Nintendo of Am., Inc.* wherein the first action was brought against retail stores. 756 F.3d 1363 (Fed. Cir. 2014). Nonetheless, cases such as *In re Google Inc.* are applicable, wherein the Federal Circuit rejected

the district court's reliance on the ability of Google customers to modify and customize the Android platform when the infringement contentions "rely almost exclusively on the underlying functionalities provided in the base Android source code provided by Google." 588 F. App'x at 990. Here, the infringement contentions rely exclusively on the underlying functionalities of the accused fuel injector, and there is no allegation that Ford has modified or customized the accused fuel injector.  In this regard, the Court finds persuasive the argument that the claim charts against other vehicle manufacturers are identical to the charts against Ford.  Dkt. No. 40 at 4.  Westport does not dispute this point.

To the extent that the preamble and a subclause of the asserted claims recite "combustion chamber" as a limitation, the inclusion does not meaningfully limit the claims such that infringement hinges upon the combination of a fuel injector and combustion chamber. See, *e.g.*, '829 patent, 17:2-3 & 10-11. For example, the preamble of claim 1 of the '829 patent describes "An injection valve for injecting fuel into a combustion chamber" but claims only an "injection valve comprising…" *Id.* at 17:2-4; see also *id.* at 18:46-47 (independent claim 23). Furthermore, the inclusion of combustion chamber in both the preamble and subclause (a) of claim 1 is merely indicative of orientation and the direction of fluid flow through the injection valve. *Id.* at 17:2-11; see also *id*. at 18:29-31 (dependent claim 18), 18:46-55 (independent claim 23). The '138 patent is no different. See 17:17-33 (claim 1), 18:57-59 (dependent claim 26), 19:1-20 (independent claim 29). In other words, the combustion chamber is not an essential limitation upon which the claimed injection valve's underlying functionality hinges.

Next, Westport disputes Ford's assertion that Robert Bosch LLC is the sole source of the accused product because it is one of many corporations related to German entity Robert Bosch, GmbH, and Ford fails to provide record evidence that every accused product is supplied solely

through Bosch. However, in the opposition brief to Westport's motion to stay in the declaratory judgment action, Robert Bosch LLC claims it "is the only Bosch entity that imports and sell the accused devices in the United States." DJ Action, Dkt. No 24 p 18. Further, Bosch claims that as the sole importer and as part of the Robert Bosch GmbH family, it should be treated as if it is the sole source and manufacturer. *Id*. In support, Bosch cites *Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*, wherein the court reasoned that because the plaintiff of a later-filed declaratory judgment action was the sole supplier of the accused product in the United States and would be directly responsible for any infringement, the supplier had the same interest as the manufacturer. 1985 WL 72065, 4*-5* (D. Mass. Feb 14, 1985).

We find that reasoning to be applicable to the inquiry whether the declaratory judgment action in the Eastern District of Virginia would resolve the major issues in the instant suit, including liability for damages. *Kahn*, 889 F.2d at 1081; *Katz*, 909 F.2d at 1463-64. In the unlikely event that Bosch seeks to avoid liability for direct infringement by relying on the combustion chamber limitation this Court would consider lifting the stay. Further, the complaint only alleges that the accused vehicles "utilize" the allegedly infringing fuel injector, Dkt. No. 1 ¶¶ 44, 52, and the infringement contentions identify the allegedly infringing fuel injector as "versions of the Bosch CRI 3.0 Piezo Injector," Dkt. No. 30-2 pp 8, 21. Accordingly, a decision that Bosch does infringe, binding on Ford by its stipulation, greatly simplifies the issues in this case. Further, Westport's argument that Ford may be supplied accused products by either Robert Bosch GmbH or any other subsidiary, affiliate, or licensee, Dkt. No. 33 p 8, is contradicted by Bosch's assertion that it "is the only entity that imports and sells the accused devices in the United States." DJ, Dkt. No 24 p 18. Whether that representation is true relates more to the jurisdiction of the Eastern

District of Virginia than to simplification of the issues in this case.  As long as a binding finding

of infringement will result, the DJ Action is sufficient for the latter.

Accordingly, the Court finds that the customer suit exception is applicable.

Next, the Court finds that the application of the customer suit exception is appropriate after

considering the traditional stay factors. First, a stay would not unduly prejudice, or present a

tactical disadvantage, to Westport. Suit was filed just shy of two years after the asserted patents

expired, so there can be no continuing infringement, and limiting the damages Westport may claim

against Ford to pre-suit damages. Further, success against Bosch would aid Westport in seeking

damages for Bosch products utilized by other Bosch customers, some of which have already been

dismissed from this Court for improper venue. See Dkt. Nos. 121 & 122 (dismissing FCA USA,

LLC), 129 & 130 (dismissing Mercedes-Benz USA, LLC), and *Westport Fuel Systems Canada*

*Inc. v. Nissan North America, Inc.,* Case No. 2:21-CV-00455-JRG-RSP, Dkt. No. 126 (ED Tx.

Sept. 30, 2022) (dismissing Nissan North America, Inc.). Additionally, discovery directly from

Bosch will likely yield better evidence because Bosch likely has greater access to evidence

regarding the functionality of the accused device than would any of its customers. Lastly, as to

prejudice or tactical disadvantages, the median time to trial or dispositive outcome in the Eastern

District of Virginia is comparable to that in the Eastern District of Texas. DJ Action, Dkt. No. 24-

3. Thus, a timely resolution of the major issues is not prevented by a stay of this suit.

Second, a stay here would clearly simplify the issues here. Any decision whether for or

against Westport in the declaratory judgment action would simplify the issues against Ford.

Westport's reliance on *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC* is

misplaced. 879 F.3d 1332 (Fed. Cir. 2018). There, the Federal Circuit found that the accused lawn

mower was an appropriate royalty base because the asserted claim was directed to the lawn mower

as a whole. *Id.* at 1348. That is not the case here because the asserted patents are directed to an injection valve and not a combustion engine or vehicle as a whole. Further, despite finding that the accused lawn mower was an appropriate royalty base, the Federal Circuit still required apportionment to the value of "the patented improvement (i.e., the improved flow control baffle) rather than the entire mower." *Id.* Next, Westport's argument that it could receive higher damages per unit in suit against Ford would require the difficult showing that Ford and Bosch "would have been willing to negotiate [separately leading to vastly different royalty rates for the same accused product] rather than to more conventionally negotiate a single license at a single rate." *California Ins. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993-'94 (Fed. Cir. 2022). However, even if further proceedings are required in this action, there is still simplification of the issues.

Third, the instant motion was filed prior to the scheduling conference setting forth discovery deadlines and a trial. When considered from that point in time, or even after briefing was completed, the suit was clearly within its infancy. At the time of this order, the parties have yet to conduct the Markman hearing and fact discovery does not close until May 30, 2023. Dkt. No. 52. While arguably no longer in its infancy at the time of this order, the current state of the instant action does not preclude a stay pursuant to the customer suit exception.

## IV.    Conclusion

For the reasons discussed above, the Court hereby **GRANTS** Ford's motion to stay pending resolution of the declaratory judgment action in the Eastern District of Virginia, **Dkt. No. 30**.

**SIGNED this 19th day of January, 2023.**


_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE